# COMPLAINT
(for filers who are prisoners without lawyers)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN



(Full name of plaintiff)

DUSAN DRAGISICH

v.

(Full name of defendant(s))

ADVOCATE AURORA HEALTH

Case Number:

(to be supplied by Clerk of Court)

A. PARTIES

1. Plaintiff is a citizen of WISCONSIN, and is located at OAKHILL CORRECTIONAL INSTITUTION (State) 5212 COUNTY HIGHWAY M  OREGON, WI 53575
(Address of prison or jail)

2. Defendant ADVOCATE AURORA HEALTH
(Name)
is (if a person or private corporation) a citizen of DELAWARE
(State, if known)
and (if a person) resides at 750 W. VIRGINIA ST. P.O. BOX 341880 MILWAUKEE, WI 53204
(Address, if known)

Complaint – 1

and (if the defendant harmed you while doing the defendant's job)

worked for **ADVOCATE AURORA HEALTH**
(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B.    STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1. Who violated your rights;
2. What each defendant did;
3. When they did it;
4. Where it happened; and
5. Why they did it, if you know.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Complaint – 2

1. Plaintiff brings this case to address Defendants transmission and disclosure of plaintiffs confidential personal identifiable information ("PII") and protected health information ("PHI") (collectively referred as private "information" or "PII and PHI") to meta platforms, Inc d/b/a Meta ("Facebook") and/or Google LLC d/b/a Google ("Google") via tracking pixels ("tracking pixels" or pixel) installed on Defendants website, Live Well App, and My Chart portal (collectively referred to as "website".

2. Plaintiffs private information was unlawfully intercepted, and the information transmitted to and received by third-parties, including the following IP addresses and cookie identifiers; dates, times, and/or locations of scheduled appointments; proximity to an Advocate Aurora Health location; information about specific providers, types of appointments or procedures; the buttons, links, pages, and tabs that patients click and view; communications between patients and others through My Chart, which may include first and last names and medical record numbers; insurance information; and, if a patient had a proxy My Chart account, the first name and the first name of the proxy.

3. Defendant admits that the private information of at least 3,000,000 individuals was improperly and unlawfully disclosed to Facebook and Google without those individuals knowledge or consent 1

4. Defendant is a non-profit Healthcare system with 26 Hospitals and 500 care sites located in Illinois and Wisconsin.2 Defendant is one of the largest Healthcare providers in the United States and employs approximately 75,000 individuals.

Legal Loan

124181

In order to provide medical treatment and care, Defendant [collects] and stores patients private information and medical [records]. In doing so, Defendant has statutory, regulatory, [contractual], fiduciary, and common law duties to safeguard [the] private information from disclosure and ensure it [remains] private and confidential. Defendant is duty bound [to] maintain the confidentiality of patient medical records and [information] and is further required to do so by the [Health] Insurance Portability and Accountability Act of 1996 ("HIPAA") and by Wisconsin statutes. 3

---

2 https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

3 https://www.aurorahealthcare.org/about-aurora

4 The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). (HIPPA) Regulations of the United States Dept of Health and Services [were] promulgated thereunder, and designed to protect the confidentiality [and] guard against the unauthorized disclosure of medical records, [patient] health care information, and other individually identifiable [healthcare] information.

5 SEE https://www.advocatehealth.com/privacy-policy/?-=2,1907/3003,18261876,15839555535-240 54,1876.
83955525

Plaintiff has sought medical services and/or treatment from the defendant. Defendant advertises its online services on its website including the Livewell app and MyChart portal, to assist patients with their medical care, and the defendant encouraged its patients to use its online services.

As a result, plaintiff used defendant's website to: (1) search for physicians, information about specific medical conditions, treatment options, services, and locations; (2) schedule appointments and procedures; (3) recieve and discuss medical diagnoses and treatment from their healthcare providers; and (4) recieve lab results, review medical records, and exchange insurance information.

Defendant's Privacy Policies (Privacy Policies) unequivocally states that it will not share its patients private information for marketing purposes without first obtaining their written permission.

As explained prior, Defendant did disclose plaintiff's private information to third parties, such as Facebook and Google, and in doing so violated its own privacy policy. Defendant's disclosure of the plaintiff's private information constitutes gross violation of common law and statutory data privacy laws.

Defendant did not acknowledge or otherwise disclose its use of the tracking pixel and its widespread and blatant disclosures of plaintiff's information until October 22, 2022 at which time it posted the following statement on its site (hereinafter referred to as the Notice of Data Security Incident):

Cafe Aurora Health is writing to provide transparency in its previous use of the internet tracking technologies, such as Google and Meta (Facebook) that we and many others in our industry has implemented to understand how patients and others interact with our websites. These technologies disclose certain details of interactions with our websites, particularly for patients who are currently logged into their Google or Facebook accounts and have shared their...

...s with these companies. When using some Advocate Aurora Health sites, certain Protected Health Information (PHI) would [be] disclosed in particular circumstances to ~~promote vendors~~ [spe]cific vendors because of pixels on our websites or [app]lications.

## [Wh]at Happened?

[I]n effort to provide high quality services to its community, [Adv]ocate Aurora Health uses the services of several third party [vend]ors to measure and evaluate information concerning the trends [and] preferences of its patients as they use our websites. To [do] so, pieces of code known as "pixels" were included on certain [of] our websites or applications. These pixels or similar technologies [are] designed to gather information that we review in [agg]regate so that we can better understand patient needs [and] preferences to provide needed care to our patient populations. [We] learned that pixels or similar technologies installed on our [pati]ent portals available through MyChart and LiveWell websites [and] applications, as well as on some of our scheduling widgets, [tra]nsmitted certain patient information to the third-party vendors [tha]t provided us with the pixel technology. We have disabled [and]/or removed the pixels from our platforms and launched [an] internal investigation to better understand what patient [inf]ormation was transmitted to our vendors.

## [Ho]w do I know if I was affected?

[Out] of an abundance of caution, Advocate Aurora Health has decided to [ass]ume that all patients with an Advocate Aurora Health MyChart [ac]count (including users of the LiveWell application), as well as [an]y patients who use scheduling widgets on Advocate Aurora [Hea]lth platforms, may be affected. Users may have been [im]pacted differently based on their choice of browser; the [con]figuration of their browsers; their blocking, clearing or use [of] cookies; whether they have Facebook or Google accounts; [wh]ether they were logged into Facebook or Google; and the [sp]ecific actions taken on the platform by the user.

hat INFORMATION WAS INVOLVED?
The Following information may have been involved: Your IP address; dates, times, and/or locations of scheduling appointments; your proximity to an Advocate Aurora Health location; information about your provider; type of appointment or procedure; communications between you and others through MyChart, which may have included your last and first name and your medical record number; information about whether you had insurance; and if you had a proxy MyChart account, your first name and the first name of your proxy. Based on our investigation, no social security number, financial account, credit card, or debit card information was involved in this incident.

. Parsing out Defendants notice of Data Security Incident, Defendant admitted that its website, including its LiveWell App and MyChart portal, contained tracking pixels that secretly enabled the unauthorized transmission and disclosure of Plaintiffs private information to third parties such as Facebook or Google.

2. Defendant also acknowledged the Notice of Security Incident pertains to "All patients with an Advocate Aurora Health MyChart account (including users of the LiveWell application), as well as any patients who used scheduling widgets on Advocate Aurora Health's platforms, may have been affected".

. Third parties, like Facebook or Google, in turn use Plaintiffs private information to target advertisements to Plaintiff based on the private information disclosed by Plaintiff to the Defendant.

At present, Defendant has not provided an exhaustive or fulsome list identifying every analytics tool it used, and it is unclear if Defendant also transmitted its patient's information to additional third parties such as LinkedIn, Pinterest, Tik Tok, YouTube, or Twitter, each of whom offers their own analytics tool and tracking pixels.

Legal Loan
124181

ccordingly, the purpose of this lawsuit is to enforce Plaintiffs'
ht to protect their private information and seek remedies
the harm caused by Defendants' intentional, reckless,
negligent disclosure to third parties.

## BACKGROUND

When an individual visits Defendant's website and submits
vate information to Defendant, its tracking pixels transmit the
he information to third parties, such as Facebook and Google.
pixel is a piece of code that "tracks the people and [the]
e of actions they take.⁵

eBook Retargeting, https://Facebook.com/business/Goals/Retargeting

xels are routinely used to target specific customers by utilizing
. Data transmitted via pixels to build profiles for the
rposes of targeting ⁶ and future marketing.

With respect to Defendant's implementation and use of the Facebook
el, patients' interactions and communications were transmitted to
book via both first-party and third-party cookies acting in tandem.
conjunction with this process, a patient's unique and persistent
eBook ID (FID) was transmitted alongside other private information
endant sent to Facebook, thereby linking their communications
d online interactions to their specific Facebook account
 future use and marketing purposes.

"Retargeting" or "Remarketing" is a form of advertising that displays
s or sends emails to previous visitors of a particular website
ho did not "covert" the visit into a sale or otherwise
eet a marketing goal of the website owner.

. Entities that use Facebook's pixel and other Business Tools - such as Defendant - are required "to have lawful rights to collect, use, and share your data before providing any data to Facebook." SEE Facebook Data Policy, https://www.facebook.com/privacy/policy/version/20220104/.

9. Moreover, Facebook's policies expressly provide that businesses using the Facebook pixel will not share data that they "know or reasonably should know ... includes Health, Financial Information other Categories of Sensitive Information" (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)."
SEE Facebook Business Tools, Term 1(h), https://www.facebook.com/legal/terms/businesstools; Meta Commercial Terms, https://www.facebook.com/legal/commercial_terms.

10. Instead of taking proactive steps to verify that businesses using Facebook pixels obtain the required consent, Facebook uses an "Honor System" under which Facebook assumes these businesses "represent the warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data, Collection, sharing, and usage." SEE Facebook Business Tools Terms https://www.facebook.com/legal/terms/businesstools

11. Pixels are routinely used to target advertising to specific customers utilizing the data gathered through the pixel to build profiles for future marketing and retargeting. By design, their purpose and function is to transmit information about an individual website visitor's use of a particular website, app, or webpage, including the individual's communications and interactions.

12. Upon information and belief, Defendant utilized the pixel data to improve and save costs on its marketing campaign, improve its data analytics, attract new patients, and market new services and/or treatments to its existing patients. In other words, Defendant implemented the tracking pixel to bolster its profits.

124181

operating as designed, Defendants tracking pixels allowed the private information that plaintiffs submitted to Defendant to be unlawfully disclosed to third parties.

For example, when a website user visits a webpage containing tracking pixels, their device is commandeered, and their communications are surreptitiously duplicated and transmitted to third parties. Stated differently, Defendants website and tracking pixels purposely altered patients browsers, forcing them to duplicate and redirect HTTP requests to third-party web servers.

The information sent to third-parties as a result of Defendants tracking pixels included the private information that plaintiff submitted to Defendants website related to their past, present, future health conditions, including, for example, the type and date of a medical appointment and physician. Such private information would allow the third party (e.g. Facebook or Google) to know that a specific patient was seeking confidential medical care the type of medical care sought. This disclosure would also allow third party to reasonably infer that a specific patient was being treated for a specific type of medical condition such as cancer, pregnancy, or HIV.

The third party, in turn, sells plaintiffs private information to third-party marketers who online target 7

"online targeting" is a process that refers to creating advertisements that specifically reach out to prospects and customers interested offerings. A target audience has certain traits, demographics and other characteristics, based on products or services the advertiser promoting" SEE https://digitalmarketinggroup.com/Aguide-to-online-geting-which-works-for-our-Business/

last visited JAN. 23, 2023

7. Plaintiffs submitted medical information related to their past, present, and future health conditions to Defendant's website, including the LiveWell app and MyChart portal and used the website to search for physicians, schedule appointments and procedures, recieve and discuss medical diagnosis and treatment from their healthcare providers, recieve lab results, review medical records, and exchange insurance information.

8. Defendant regularly encouraged plaintiff to use its digital tools, including its website, LiveWell app, and MyChart portal, to recieve healthcare services. In doing so Defendant also directed plaintiffs to its privacy policies, which preclude the transmission or disclosure of private information to unauthorized third parties such as Facebook or Google.

9. Plaintiff provided private information to Defendant in order to recieve medical services and with the reasonable expectation that Defendant would protect their private information.

10. At all times that plaintiff visited and utilized Defendants website, they had a reasonable expectency of privacy in the private information collected through Defendants website including that it would remain secure and protected and only utilized for medical purposes. Plaintiffs expectations were entirely reasonable because (1) they are patients; and (2) Defendant is a healthcare provider which is required by common and statutory law to protect its patients private information. Moreover, plaintiffs also relied on Defendants privacy policies, which do not permit the transmission or disclosure of plaintiffs private information to unauthorized third parties.

11. Defendant further made express and implied promises to protect plaintiffs information and maintain the privacy and confidentiality of communications that patients exchange with Defendant.

Legal Loan

124181

efendant owed common law, contractual, statutory, and regulatory to keep plaintiffs private information safe, secure, and confidential. ermore, by obtaining, collecting, using, and deriving a benefit from iffs private information, Defendant assumed legal and equitable to these individuals to protect and safeguard that information unauthorized disclosure.

However, as set forth more fully below, Defendant failed in its ations and promises by using tracking pixels while knowing doing so would result in the transmission and disclosure of tiffs private information to unauthorized third parties with ng history of privacy violations and misconduct – i.e., Facebook.

laintiffs private information can – and likely will – be further sloited and disseminated for retargeting, marketing, or rance companies utilizing the information to set insurance rates!

While Defendant willfully and intentionally incorperated the tracking into its website, Defendant did not disclose to plaintiff that it as their sensitive and confidential communications via the king pixel to Facebook or Google until on or around October 2022 8. As a result, plaintiff was unaware that his private rmation was being surreptitiously transmitted and/or losed to Facebook and Google as they communicated with e Healthcare provider via the website.

---

tps://www.wpr.org/data-breach-Advocate-Aurora-Health-System-May - Exposed 3m - patients-information

last visited Jan 20, 2023

6. DEFENDANT breached its obligations in one or more of the following ways: (i) Failing to adequately review its marketing programs and web based technology to ensure Defendants website was safe and secure; (ii) Failing to remove or disengage technology that was known and designed to share web-users information; (iii) Failing to obtain the consent of Plaintiff to disclose their private information to Facebook, Google, and others; (iv) Failing to take steps to block the transmission of Plaintiffs private information through Tracking Pixels; (v) Failing to warn Plaintiff and (vi) otherwise failing to design and monitor its website to maintain the confidentiality and integrity of patient private information.

7. Plaintiff has suffered injury as a result of Defendants Conduct. These injuries include: (i) invasion of privacy, (ii) lost time and opportunity costs associated with attempting to mitigate the overall consequences of the tracking pixel; (iii) loss of Benifit of the Bargain, (iv) diminution or deprivation of value of the private information, (v) Statutory Damages, and (vi) the continued and ongoing risk of exposure of his private information.

8. Plaintiff seeks to remedy these harms and Bring causes of action for (1) Invasion of privacy - Intrusion into Seclusion (2) Invasion of Privacy - Publication of private facts; (3) Unjust Enrichment; (4) Breach of implied contract; (5) Breach of Confidence; (6) Violations of the Electronics Communication privacy Act ("ECPA") 18 U.S.C. § 2511(1) - unauthorized interception, use, and disclosure; (7) Failior to maintain Confidentiality of patient Healthcare Records act under Wisconsin law. Wis. Stat. § 146.81 et seq; (8) Violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, et seq; ~~(9)~~ ⬛⬛⬛⬛⬛

[signature] 11-23-23

Legal Loan

124181

Case 2:23-cv-01605-SCD   Filed 11/29/23   Page 13 of 15   Document 1

C. JURISDICTION

 ☒ I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

 ~~I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $ 5 million Dollars~~

D. RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or to stop doing something.

EQUITABLE Relief ENJOINING DEFENDANT FROM ENGAGING IN THE WRONGFUL CONDUCT COMPLAINED OF HEREIN PERTAINING TO THE MISUSE AND/OR REDISCLOSURE OF THE PRIVATE INFORMATION OF PLAINTIFF

INJUNCTIVE Relief AND EQUITABLE Relief NECESSARY to protect the interests of Plaintiff

N AWARD OF DAMAGES, INCLUDING BUT NOT LIMITED to, ACTUAL, CONSEQUENTIAL PUNITIVE, AND NOMINAL AS ALLOWED BY LAW IN AN AMOUNT to Be Determined

Attorneys Fee's AND Costs AND litigation Expenses As Allowed PREJUDGMENT INTEREST ON ALL AMOUNTS AWARDED AND SUCH OTHER AND FURTHER Relief AS THIS COURT MAY DEEM JUST AND PROPER

Complaint – 4

E.  **JURY DEMAND**

I want a jury to hear my case.

☒ – YES  ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 23RD day of NOVEMBER 2023.

Respectfully Submitted,

*[signature]*
Signature of Plaintiff

124181
Plaintiff's Prisoner ID Number

OAKHill Correctional Institution
5212 County Highway M.
Oregon, WI 53575
(Mailing Address of Plaintiff)

## REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE

☒ I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a Request to Proceed in District Court without Prepaying the Full Filing Fee form and have attached it to the complaint.

☐ I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

Complaint – 5

Case 2:23-cv-01605-SCD    Filed 11/29/23    Page 15 of 15    Document 1